**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara A. Minton,   ) | CV 11-00461-PHX-FJM |
|              Plaintiff,   ) | **ORDER** |
| vs.   ) | |
| Michael J. Astrue,   ) | |
|              Defendant.   ) | |

This is an appeal from a denial of social security disability benefits. We have before us plaintiff's opening brief (doc. 15). Defendant did not respond, but separately filed a motion to remand (doc. 18), to which plaintiff responded (doc. 22). Defendant did not file a reply, and the time to reply has expired.

Plaintiff filed applications for disability insurance benefits and social security income on July 30, 2007. Her applications were denied initially and on reconsideration. After a hearing in September 2009 before an administrative law judge (ALJ), plaintiff's application was again denied. The ALJ concluded that plaintiff was not disabled because she could perform her past work. The Appeals Council denied plaintiff's request for review in January 2011, rendering the ALJ's decision final. Defendant moves to remand the action to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). Plaintiff argues that the ALJ erred at steps two and four, requiring us to remand for an immediate award of benefits.

## I. Background

The alleged onset of disability is March 1, 2006. Plaintiff was born in 1946. She completed high school and one year of college. Plaintiff previously worked as a customer service representative at a call center. She seeks disability benefits based on arthritis, knee joint degeneration, and depression.[1] She was treated for depression and was diagnosed with cannabis abuse. Plaintiff was diagnosed with degenerative joint pain in the left knee in December, 2006 and osteoarthritis in September 2007. Plaintiff underwent left knee replacement surgery in March 2009.

Plaintiff volunteers at a camp site in return for a place to park her recreational vehicle. As a campground host, she assists with picking up trash, cleaning the yard, interacting with campers, and trimming trees. She lives alone, does some housework, spends time with her children and grandchildren, and cares for her dogs. She enjoys painting and woodcarving. Plaintiff acknowledges that she smokes marijuana daily.

## II. The ALJ's Disability Determination

The ALJ followed the Social Security Act's five-step procedure to determine whether plaintiff is disabled under the Act. See 20 C.F.R. § 416.920(a)(4). The ALJ determined at step one that plaintiff had not engaged in substantial gainful activity since the date of her application. At step two, the ALJ found that status post left knee replacement surgery, osteoarthritis, and cannabis dependence were severe impairments. The ALJ concluded at step three that none of plaintiff's impairments or combination of impairments met one of the Act's listed impairments. Because the ALJ found that plaintiff did not meet or equal a listed impairment, he assessed plaintiff's residual functional capacity ("RFC") and past relevant work at step four. The ALJ concluded that plaintiff has the RFC to perform a full range of light work as defined in 20 C.F.R §§ 404.1567(b) and 416.967(b). The ALJ found based on counsel's representation at the hearing that she performed her past work as a call center

---

[1] Plaintiff originally sought benefits because of her diabetes. The ALJ did not find that diabetes was a severe impairment and plaintiff does not appeal this finding.

1  representative at a sedentary level.  He concluded that plaintiff could perform her prior work
2  both as actually and generally performed, because she is capable of light work with at least
3  frequent manipulative activities.  The ALJ concluded at step four that plaintiff was not
4  disabled, and so did not undertake a step five analysis as to whether she could perform other
5  work given her RFC, age, education, and work experience.

### III. The Use of Examining Physician Dr. Prieve

Defendant requests a remand for further proceedings because a consulting examiner used in the case, Dr. John Prieve, did not meet the social security agency's (SSA) program integrity requirements. Dr. Prieve performed a consultative evaluation of plaintiff in October 2007.  He concluded that plaintiff can lift or carry up ten pounds frequently and twenty pounds occasionally, can stand or walk up to four hours in a work day, and has no limitations in sitting.  Dr. Prieve found that plaintiff does not have any limitations with reaching, handling, fingering, and feeling.  She can occasionally stoop, kneel, crouch, crawl, climb ramps, and climb stairs.  Plaintiff should never climb ladders, ropes, or scaffolds. Tr. at 285. Plaintiff did not object to the admission of Dr. Prieve's report at the hearing before the ALJ. The ALJ adopted Dr. Prieve's proposed exertional limitations in determining plaintiff's RFC. Id. at 16.

Plaintiff attached a document to her opening brief in this case indicating that Dr. Prieve's Massachusetts medical license was suspended indefinitely in 2006.[2] The SSA states, however, that it "will not use in our program any individual. . . whose license to provide health care services is currently revoked or suspended by any State licensing authority." 20 C.F.R. § 404.1503a. Because Dr. Prieve's medical license was suspended in Massachusetts, defendant concedes that the SSA should not have used him as a consulting examiner. Accordingly, defendant requests remand in order to obtain another consultative examination and reevaluate plaintiff's RFC, ability to perform her past work, and, if needed, her ability to perform other work. Plaintiff objects, arguing that there is no reason that another doctor

---

[2] Dr. Prieve remains licensed in Arizona.

would render an opinion different from Dr. Prieve's, which the ALJ found was consistent with the record. Indeed, a second consultative examination conducted by Dr. Richard Palmer in June 2008 proposed similar limitations on physical exertion.[3] See Tr. at 370-72.

Plaintiff, however, does not dispute that the SSA program integrity requirements prohibit using Dr. Prieve as a consultative examiner. This error lies with the SSA, not with the ALJ, who was not made aware of Dr. Prieve's suspension. As plaintiff points out, when the ALJ adopted Dr. Prieve's exertional limitations in determining her RFC, he noted that these recommendations were consistent with other evidence in the record. The ALJ concluded that plaintiff could perform her prior position both as actually performed (at a sedentary level) and as performed in the national economy (at a light level). Given the similarity of Dr. Prieve and Dr. Palmer's findings, it is not evident from the record that the ALJ would be required to find plaintiff disabled if he had not relied on Dr. Prieve's report. Thus, a remand for immediate benefits solely based on the SSA's use of Dr. Prieve is inappropriate. See Strauss v. Comm'r of the Social Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011) ("claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled").

On remand, the ALJ should not consider Dr. Prieve's report. We leave it to the ALJ's discretion to determine whether he has enough evidence without Dr. Prieve's report to render a decision, or whether an additional consultative medical examination is needed.

### IV. The ALJ's Step Two Analysis

Both plaintiff and defendant agree that the ALJ erred at step two in assessing whether plaintiff's depression was severe. The ALJ concluded that plaintiff's depression does not cause more than minimal limitation in her ability to perform work, and is therefore non-severe. State agency psychologist Dr. Dalton reviewed the record and submitted an opinion

---

[3] Dr. Palmer found that plaintiff can lift 20 pounds occasionally and ten pounds frequently. She can stand and walk five hours and has no limitations in sitting. She can stoop, reach, handle, and finger frequently, and can kneel, crouch, crawl, and climb a ramp or stairs occasionally.

- 4 -

1  concluding that plaintiff's depression creates limitations in understanding, carrying out
2  detailed instructions, and remembering. <u>Tr.</u> at 315-317. This determination was affirmed
3  by Dr. Fair in June 2008. <u>Id.</u> at 359. The ALJ did not explicitly acknowledge these opinions
4  or discuss any reasons for discounting them. This was error. On remand, the ALJ must
5  undertake a new step two analysis to determine whether plaintiff's depression is severe.

## V. Plaintiff's Ability to Perform Her Past Work

7  Plaintiff argues that the ALJ erred in concluding that she could perform her past work
8  as a call center representative. The ALJ found that plaintiff's past work as a "Customer
9  Service Representative" is classified as a light and semi-skilled position. "[T]he full range
10 of light work requires standing or walking, off and on, for a total of approximately 6 hours
11 of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (1983). Plaintiff argues that the
12 ALJ erred in finding that she could perform a full range of light work. The ALJ adopted Dr.
13 Prieve's limitations, including a finding that plaintiff could stand or walk for up to four hours
14 in a work day. We agree with plaintiff that this limitation is incongruent with a finding that
15 plaintiff has the capacity to perform the full range of light work.

16 But this does not mean that the ALJ's conclusion that plaintiff could perform her past
17 work as actually performed was error. As the ALJ noted, at the hearing plaintiff's counsel
18 confirmed that plaintiff actually performed her position at a sedentary level. Plaintiff has not
19 contested this finding. Sedentary jobs involve "lifting no more than 10 pounds at a time and
20 occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . periods
21 of standing or walking should generally total no more than about 2 hours of an 8-hour
22 workday, and sitting should generally total approximately 6 hours of an 8-hour workday."
23 <u>Id.</u> at *5. Because Dr. Prieve noted that plaintiff has no limitations on sitting, can stand and
24 walk up to four hours, frequently lift ten pounds, can occasionally stoop, and has no
25 limitations on handling, fingering, or reaching, it was not error for the ALJ to conclude that

- 5 -

1  plaintiff, based on her calculated RFC, could perform her past work as actually performed.[4]

## VI. Weight Given to Medical Opinions and Plaintiff's Subjective Symptoms

Plaintiff contends that the ALJ erred at step four by finding that her subjective symptoms were not credible and by failing to give proper weight to the reports of treating psychiatrist Dr. Gogek, physician's assistant Hobson, consulting examiner Dr. Young, and consulting examiner Dr. Palmer. Due to these errors, plaintiff argues that we must credit the evidence as true and remand for an immediate award of benefits.

A. Physician's Assistant Richard Hobson

Plaintiff argues that the ALJ erred by not giving controlling weight to treating physician's assistant Richard Hobson. Hobson first completed a medical source statement in September 2008, indicating that plaintiff could not regularly work eight hours a day, five days a week due to her arthritis, "psych" issues, and diabetes. He concluded that plaintiff can sit more than two hours but less than three hours, can stand more than two hours but less than three hours, can walk more than one hour but less than two hours, and can lift and carry less than ten pounds. He also found that her "psych" issues are a moderately severe impairment. Tr. at 437-38. Five months after plaintiff's knee replacement, Hobson completed a second assessment. He once again concluded that plaintiff cannot work due to her arthritis, psych issues, and diabetes. He concluded that plaintiff can sit more than three hours but less than four hours, can stand/walk more than two hours but less than three hours, and could lift and carry less than ten pounds. He found she can never bend, crawl, climb, stoop, crouch, or kneel, and noted again that plaintiff's "psych" issues are moderately severe. Id. at 484-85.

Opinions of treating physicians are favored over those of non-treating physicians. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). A physician's assistant, however, is not an acceptable medical source. SSR 06-03p, 2006 WL 2329939 at *2 (Aug. 9, 2006). Only

---

[4] Dr. Palmer's opinion is also consistent with a finding that plaintiff can physically perform her past job at a sedentary level. See Tr. at 370-72.

- 6 -

1  acceptable medical sources are considered treating sources whose medical opinions can be
2  entitled to controlling weight. Id. Thus, Hobson's opinion cannot be entitled to controlling
3  weight. However, information from "other" medical sources - including physician assistants
4  - may "provide insight into the severity of the impairment(s) and how it affects the
5  individual's ability to function." Id. If the ALJ wishes to disregard Hobson's opinion, he
6  must give specific reasons that are germane to Hobson for doing so. Stout v. Comm'r, Social
7  Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006).

8        The ALJ correctly stated that Hobson is not an acceptable medical source. After
9  noting that Hobson's most recent treatment records show that plaintiff's diabetes was under
10 control, and her knee was healing well from surgery and had good mobility, the ALJ assigned
11 Hobson's opinion no weight. One example of a germane reason to discount the opinion of
12 an "other" medical source is when that opinion conflicts with medical evidence. See Lewis
13 v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). Here, the ALJ provided a germane reason for
14 discounting Hobson's opinion which is supported by substantial evidence. Hobson's post-
15 knee replacement treatment notes indicate that plaintiff's blood sugar levels were doing fine.
16 He also referenced her good knee mobility. Plaintiff was doing physical therapy and was
17 "progressing well," walking without a cane unless she was going for "a long distance walk."
18 Tr. at 475. These findings are inconsistent with Hobson's opinion - nearly identical to the
19 one he completed prior to plaintiff's knee replacement - that plaintiff could never stoop,
20 kneel, crouch, bend, or crawl. Because the ALJ identified germane reasons for discounting
21 Hobson's opinion that plaintiff could never work, his decision to assign Hobson's opinion no
22 weight was not legal error.

23 B. Treating Psychiatrist Ed Gogek

24       Plaintiff's treating psychiatrist, Dr. Gogek, completed a medical assessment of
25 plaintiff's ability to perform work-related mental activities in June 2008. He concluded that
26 plaintiff has moderately severe limitations in daily activities, constriction in interests, and the
27 ability to relate to others, respond to co-workers, and respond to work pressures. He also
28 concluded that plaintiff has moderate limitations in her ability to respond appropriately to

1 supervision and perform complex tasks. Finally, Dr. Gogek found mild limitations in
2 plaintiff's personal habits, ability to understand instructions, and perform simple and
3 repetitive tasks. Tr. at 433-34. Plaintiff argues that the ALJ erred by not giving Dr. Gogek's
4 opinion controlling weight.

5       A medically acceptable treating source's opinion will be given controlling weight if
6 the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic
7 techniques and is not inconsistent with the other substantial evidence" in the record. 20
8 C.F.R. § 404.1527(d)(2); see also Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir.
9 2001). An ALJ must articulate clear and convincing reasons to reject a treating physician's
10 opinion that is not contradicted by another physician's opinion. Bray v. Comm'r of Social
11 Sec. Admin., 554 F.3d 1219, 1228 n.8 (9th Cir. 2009). When a treating physician's opinion
12 is contradicted, the ALJ must provide specific and legitimate reasons to discount the opinion
13 that are supported by substantial evidence. Id. at 1228.

14       Dr. Gogek's findings of moderately severe limitations differ from the findings of
15 examining psychologist Dr. David Young and consulting psychologist Dr. Brady Dalton.
16 Dr. Young examined plaintiff in November 2007 and concluded that she functions
17 independently and can handle activities such as driving and her woodworking hobby
18 (activities of daily living). He noted that she is capable of adapting to activities given to her
19 to complete and can handle small groups. Tr. at 300. Dr. Dalton completed a mental RFC
20 assessment. He found that plaintiff is not significantly limited in her ability to get along with
21 others, make simple work decisions, complete a normal workweek, interact appropriately
22 with the public, and respond to changes in the work setting. Id. at 315-16. Dr. Dalton
23 concluded that plaintiff is capable of simple to semi-skilled work. Id. at 317. Plaintiff argues
24 that these differences in findings are not contradictions. But differences in opinion as to
25 ability to function are still contradictions. See Bray, 554 F.3d at 1227-28 (treating
26 physician's assessment that plaintiff could only work four hours a day contradicted SSA
27 examining physician's assessment that plaintiff could stand/walk and sit six hours a day; ALJ
28 only needed to present specific and legitimate reasons to discount treating physician's

- 8 -

opinion). Because Dr. Gogek's assessment contradicted other evidence in the record, the ALJ needed to give specific and legitimate reasons for rejecting his opinion.

The ALJ declined to adopt Dr. Gogek's opinion, stating that it was not supported by his treatment notes. Specifically, he reasoned that Dr. Gogek's limitations on daily activities and social interactions are contradicted by plaintiff's history of interacting regularly with the public as a campground host and interacting regularly with family. See Tr. at 581-84. Next, the ALJ noted that Dr. Gogek has consistently assigned a Global Assessment of Functioning ("GAF") score of 55, which indicates moderate symptoms. Tr. at 17. Plaintiff's GAF score is incongruent with Dr. Gogek's assessment that plaintiff has moderately severe limitations in several areas. This inconsistency provides a specific and legitimate - even a clear and convincing - reason for discounting Dr. Gogek's opinion. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancy between a treating doctor's opinion and his treatment notes was a "clear and convincing" reason to discredit the opinion); Melton v. Comm'r of Social Sec. Admin., 442 Fed. Appx. 339, 341 (9th Cir. 2011) (unpublished opinion) (inconsistency between a GAF score of 55 and the treating doctor's opinion that plaintiff had marked limitations in daily activities and social functioning was a specific and legitimate reason for the ALJ to discount the opinion). The ALJ did not err by failing to assign Dr. Gogek's opinion controlling weight.

C. Examining Physician Richard Palmer

The ALJ did not adopt Dr. Palmer's opinion that plaintiff should be limited to frequent handling, reaching, and fingering and cannot work at extreme temperatures. He rejected these limitations because plaintiff had a full range of motion at the examination and the opinion was not supported by objective imaging. Tr. at 16. An ALJ must provide specific and legitimate reasons supported by substantial evidence in the record to reject the opinion of an examining doctor that is contradicted by another doctor. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). In this case, Dr. Palmer's limitations are contradicted not only by Dr. Prieve's report, but also by the physical RFC assessment completed by consulting physician Dr. Thomas Glodek in October 2007. Dr. Glodek found that plaintiff had unlimited exposure

- 9 -

1  to heat and cold, and no limitations on handling, reaching, and fingering. Tr. at 286-93.
2  However, an RFC Assessment completed by Dr. Ernest Griffith in July 2008 states that
3  plaintiff is limited to frequent handling and fingering based on the medical records and
4  should avoid concentrated exposure to extreme cold and humidity. Tr. at 420-21.[5]
5  Moreover, the ALJ found that plaintiff's osteoarthritis is a severe impairment. Thus, the
6  ALJ's rejection of Dr. Palmer's limitations is not supported by substantial evidence in the
7  record.

D. Examining Psychologist David Young

The ALJ reviewed Dr. Young's diagnosis of depression and anxiety and his findings. He adopted Dr. Young's conclusions that plaintiff can handle small groups, can adapt to responsibilities and activities, has minor weaknesses in understanding and remembering, and can function independently. Tr. at 17. Plaintiff argues that Dr. Young "did not find [plaintiff] capable of performing semi-skilled or skilled work." Response to Mot. to Remand at 12-13. Dr. Young does not reach this conclusion. The ALJ did not err in considering and adopting Dr. Young's opinion, which was supported by objective psychological testing and plaintiff's own statements made during the examination.

E. Plaintiff's Subjective Symptoms

Plaintiff also argues that the ALJ erred by improperly weighing her subjective complaints. The evaluation of a claimant's subjective symptoms requires a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). The first step is not at issue here, because the ALJ conceded that plaintiff "presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (citation omitted). He concluded, however, that plaintiff's testimony about pain and fatigue was not credible. The ALJ did not cite any evidence of malingering, thus he must give "specific, clear and convincing reasons" for rejecting plaintiff's subjective

---

[5] Plaintiff does not argue that the ALJ's failure to address Dr. Glodek and Dr. Griffith's findings in his decision constituted error. Accordingly, we do not reach these issues on appeal.

1 symptoms. Id. (citation omitted).

2 Plaintiff testified that she gets tired and has to lie down every day. She can only sit
3 for twenty to thirty minutes, then has to move. She has memory and concentration problems.
4 When the ALJ asked whether plaintiff could perform her prior job at the call center, she
5 testified that "I can't handle the stress of the fast pace anymore. My memory loss is gone.
6 I have a lot of memory loss. I, that's how come I really started doing a lot of going and
7 seeing [] mental health, because it was so stressful for me." Tr. at 33. In making his
8 credibility finding, the ALJ stated that plaintiff's symptoms of fatigue and pain are
9 inconsistent with her level of daily activity performing the "duties as a camp host, performing
10 woodworking and painting, swimming, walking, spending time with children and
11 grandchildren, caring for several pets, and performing housework." Tr. at 16. The ALJ
12 noted that plaintiff performed these activities "both before and after her knee replacement
13 surgery." Id. But plaintiff's activities of daily living "do[] not in any way detract from her
14 credibility as to her overall disability." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir.
15 2001). The ALJ did not discuss how plaintiff's performance of these activities translated to
16 the work setting. And although there is medical evidence in the record that is arguably
17 inconsistent with plaintiff's reporting of her symptoms (for example, Dr. Palmer's assessment
18 that plaintiff has no limitations on sitting), the ALJ did not discuss any medical evidence
19 when rejecting plaintiff's subjective complaints. The ALJ's failure to support his credibility
20 determination with specific, clear, and convincing reasons was error. See Vasquez, 572 F.3d
21 at 592 (ALJ's failure to discuss "any specific medical evidence" before rejecting plaintiff's
22 subjective symptoms was error) (emphasis in original).

23 **VII. Appropriate Remedy on Remand**

24 The ALJ erred in rejecting Dr. Palmer's manipulative limitations and analyzing
25 plaintiff's subjective symptom testimony. Plaintiff argues that the appropriate remedy is to
26 credit this evidence as true and remand for an award of benefits. We credit evidence as true
27 and remand for an award of benefits where "(1) the ALJ has failed to provide legally
28 sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must

be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

Here, even if we were to credit plaintiff's testimony and Dr. Palmer's limitations as true, there are still outstanding issues that must be resolved before payment of benefits could be made. Plaintiff does not challenge the ALJ's finding that her cannabis dependence is a severe impairment. And, indeed, the record shows that plaintiff admits smoking marijuana daily. A person is not considered disabled "if alcoholism or drug addiction would. . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Thus, even if plaintiff is found to be disabled, the ALJ "must determine whether [her] drug addiction. . . is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a). Because there is medical evidence in the record that plaintiff is dependent on marijuana, there is an outstanding issue that must be resolved before benefits can be awarded. Thus, remand for an immediate award of benefits is not appropriate. See Harman v. Apfel, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (evidence of potential alcohol abuse, which "might disqualify [plaintiff] from receiving benefits," was one "unanswered question[]" that made district court's remand for further proceedings appropriate).

Vasquez notes that a court may credit a plaintiff's subjective symptom testimony as true even where a remand for further proceedings is needed, especially in cases where a plaintiff is of advanced age and suffered a "severe delay" in the application process. Vasquez, 572 F.3d at 593-94. We decline to do so in this case. Although plaintiff is of advanced age by social security standards, her application was filed less than five years ago, which is not an extraordinary amount of time by social security standards. See id. (severe delay when application for benefits filed nearly seven years before); Loveless v. Astrue, 09-CV-00830-JWS, 2010 WL 2720848, at *3 (D. Ariz. July 9, 2010) (application filed seven years ago not "an extraordinarily lengthy period of time"). Moreover, the errors made in this case, when combined with the evidence of plaintiff's marijuana use, leaves us with a situation

1  where it is far from clear that the ALJ would be required to find plaintiff disabled should the
2  evidence be credited as true.  See Santiago v. Astrue, 06-CV-3052-PHX-RCB, 2010 WL
3  466052, at *23 (D. Ariz. Feb. 10, 2010) (declining to credit plaintiff's subjective symptoms
4  or the opinion of her treating doctor as true when it was unclear from the record whether
5  benefits must be awarded after the evidence is properly considered on remand).

## VIII. Conclusion

**IT IS ORDERED GRANTING** defendant's motion to remand (doc. 18). Accordingly, we reverse the decision of the Commissioner and remand for further proceedings under sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ is directed to: (1) refrain from using the report of consulting examiner Dr. Prieve, and decide whether a new consultative examination is needed;

(2) undertake a new step two analysis that reconsiders whether depression is a severe impairment;

(3) give further consideration to the opinion of examining source Dr. Palmer, particularly to his proposed limitations on handling, reaching, and fingering and working at extreme temperatures;

(4) reevaluate the plaintiff's subjective symptoms;

(5) reevaluate the plaintiff's residual functional capacity and determine at step four whether plaintiff can perform her past work as a call center representative;

(6) if plaintiff is found to be disabled at step four or step five, determine whether her marijuana dependence is a contributing factor material to the determination of disability.

The Clerk shall enter final judgment.

DATED this 23rd day of March, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge